**Ralph R. COSTILLA, Plaintiff-Appellee,**

v.

**ALUMINUM COMPANY OF AMERICA, Defendant-Appellant.**

No. 86–2652.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1987.

---

16. G. Gilmore & C. Black, *The Law of Admiralty* 145–47 (1975).

17. *Id.* at 146 n. 23.

18. 642 F.2d at 725.

Rolando Leon, Robert B. Summers, San Antonio, Tex., for defendant-appellant.

Phillip R. Spicer, Jr., Robert K. Kahn, San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, RANDALL and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Aluminum Company of America (Alcoa) appeals an adverse judgment entered on a jury verdict in favor of appellee, Ralph Costilla, in this products liability action. We vacate and remand for a new trial.

## I.

Costilla was injured when an aluminum twist-type bottle cap prematurely released from a 10–ounce bottle of Orange Crush and struck him in the eye. He filed this suit against Walgreen Texas Co. (Walgreen), the seller of the soft drink, San Antonio Dr. Pepper Bottling Co. (San Antonio Pepper), the manufacturer of the soft drink, and Alcoa, the manufacturer of the bottling machinery and bottle cap. Alcoa cross-claimed against Dr. Pepper Co. (Dr. Pepper), San Antonio Pepper, and Orange Crush International (Crush International) seeking contribution and indemnity. Before trial, Costilla settled with Walgreen and San Antonio Pepper.

The Orange Crush drink was assembled and bottled by San Antonio Pepper pursuant to a licensing agreement with Crush International. San Antonio Pepper used a capping machine purchased from Alcoa to cap and seal the bottles with aluminum twist caps. Alcoa supplied the blank caps to San Antonio Pepper. San Antonio Pepper sold the Orange Crush to Walgreen, which in turn sold it to appellee, Costilla.

Costilla proceeded against Alcoa on three legal theories: (1) breach of an implied warranty of fitness;[1] (2) failure to properly design the capping machine and bottle cap in violation of *The Restatement (2d) of Torts* 402A and 402B;[2] and (3) negligence and gross negligence in failing to produce the cap and capping machine so that the cap would not prematurely release, failing to provide adequate inspection techniques for the product and in failing to warn plaintiff of the dangers of a premature release of the cap.

Following the trial, the jury found that the bottle cap and capping machine were

---

1. The Texas Code defines the implied warranty of merchantability as follows:

    Unless excluded or modified [section 2.316], a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind.... Goods to be merchantable must be at least such as ...
    (3) are fit for the ordinary purposes for which such goods are used ...
    Tex.Bus. & Com.Code § 2.314.

2. Restatement (2d) of Torts § 402A, states:

    One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product....
    See *Rourke v. Garza*, 530 S.W.2d 794, 798 (Tex. 1975).

not defectively designed at the time it was manufactured, marketed, and sold.[3] The jury also found that Alcoa was not negligent in failing to produce the cap and capping machine so that the cap would not prematurely release nor were they negligent in failing to provide adequate inspection techniques for the product. However, the jury did find that Alcoa was negligent in failing to warn Costilla and, additionally, that Alcoa breached its implied warranty of merchantability because the bottle cap was unfit for its ordinary purposes. The jury fixed plaintiff's compensatory damage at $43,100 and imposed punitive damages against Alcoa in the sum of $100,000.[4]

3. The relevant jury interrogatories provides:
SPECIAL INTERROGATORY NO. 1
Do you find from a preponderance of the evidence that the bottle cap was defectively designed at the time it was manufactured, marketed, and/or sold by Alcoa?
A defectively designed product is a product that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.
ANSWER: "Yes" or "No."
ANSWER: **No.**

\* \* \* \* \* \*

SPECIAL INTERROGATORY NO. 3
Do you find from a preponderance of the evidence that the capping machine was defectively desgined (as previously defined) at the time it was manufactured, marketed, and/or sold by Alcoa?
ANSWER: "Yes" or "No."
ANSWER: **No.**

\* \* \* \* \* \*

SPECIAL INTERROGATORY NO. 8
Do you find from a preponderance of the evidence that defendant was negligent, and that such negligence, if any, was a proximate cause of the occurrence in question? "Negligence" means failure to use ordinary care; that is, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. "Ordinary care" means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.
"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which caused such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have forseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of the event.
Answer: "Yes" or "No."

| | Negligence | Proximate Cause |
|---|---|---|
| A) In failing to produce the cap and capping machine so that the cap would not prematurely release. | No | |
| B) In failing to provide adequate inspection techniques for the product. | No | |
| C) In failing to warn of the possibility of premature release. | Yes | Yes |

If you have found negligence and proximate cause on either (A), (B), or (C), then answer Special Interrogatory No. 9; otherwise, do not answer Special Interrogatory No. 9.
SPECIAL INTERROGATORY NO. 9
Do you find from a preponderance of the evidence that such negligence, if any, was a heedless and reckless disregard of the rights of others affected by it?
A "heedless and reckless disregard" means more than momentary thoughtlessness, inadvertence, or error in judgment. It means such an entire want of care as to indicate the act or omission in question was a result of conscious indifference to the rights, welfare, or safety of the person affected by it?
Answer: "Yes" or "No."
Answer: **Yes.**
The plaintiff also claims that the premature release of the cap of the bottle rendered it unfit for the ordinary purposes for which the product was intended. Defendant denies the bottle cap was unfit for ordinary purposes.
SPECIAL INTERROGATORY NO. 10
Do you find from a preponderance of the evidence that the bottle cap was unfit for the ordinary purposes for which it was intended, and that such conditions, if any, was a proximate cause (as previously defined) of the occurrence in question?
Answer: "Yes" or "No."
Answer: Unfit **Yes.**
Proximate cause **Yes.**

4. Crush International, Dr. Pepper, and San Antonio Pepper were found negligent in failing to produce the products so that the cap would not prematurely release, in failing to properly inspect the product, and for failing to warn of the possibility of premature release. The jury ap-

Alcoa now appeals arguing that: (1) the jury's response to the finding that the bottle cap was unfit for its ordinary purpose cannot be reconciled with its finding that the product was not defectively designed; (2) the jury's finding that Alcoa negligently failed to warn Costilla cannot stand because the district court failed to instruct the jury that Alcoa could discharge its duty to warn the consumer by warning its intermediaries; (3) there is no legal basis to support the imposition of punitive damages against Alcoa; and (4) by warning San Antonio Pepper, Alcoa discharged its duty to warn plaintiff.

## II.

### A.

█ We consider first Alcoa's argument that the jury's finding that the bottle cap was unfit for its ordinary purposes conflicts with the jury's finding that the cap was not defectively designed. A jury's answers to special interrogatories are inconsistent:

> If on review of the district court's judgment we find that there is no view of the case which makes the jury's answers consistent and the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause remanded for trial anew.

*Mercer v. Long MFG, Inc.*, 665 F.2d 61, 65 (5th Cir.1982); *see also J. Moore, Federal Practice & Procedure* § 49.02[4] at 29–30 (2d ed. 1985).

The conflict Alcoa points to is between the jury's answer to Interrogatories Nos. 1 and 3 that address the products liability claims and the jury's answer to Interrogatory No. 10 which addresses the breach of warranty claim. In answer to Interrogato-

ries Nos. 1 and 3, the jury found that the product was not defective. On the other hand, the jury in answer to Interrogatory No. 10 found that the product was "unfit for the ordinary purposes for which it was intended." The trial court properly charged the jury that a defective product was a product that was unreasonably dangerous for normal use. Alcoa calls our attention to *Foster v. Ford Motor Co.*, 621 F.2d 715 (5th Cir.1980), in which we stated that goods unfit for ordinary purposes are goods that are unreasonably dangerous.

In *Foster*, the plaintiff sued Ford Motor Co. on both products liability and breach of warranty theories. The district court submitted the case to the jury solely on the plaintiff's products liability theory and declined to charge the jury on plaintiff's breach of warranty theory. The jury found for the defendant on the products theory and on appeal the plaintiff urged that the district court erred in refusing to submit the case to the jury on his alternate breach of warranty theory. We affirmed the district court on grounds that the jury verdict in favor of the defendant on the products liability theory precluded plaintiff's recovery on a breach of warranty theory. We stated: "The negative implication of the warranty requirement that goods be 'fit for the ordinary purposes for which such goods are used' is that the goods not be unreasonably dangerous.... Viewed in this fashion, the difference between the two theories 'is largely one of terminology.'" *Id.* at 719 (quoting *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 126 (9th Cir.1968)).

█ We are persuaded that, as to Alcoa, the jury's findings on the plaintiff's products liability claim and the breach of warranty claim are in conflict;[5] because these

---

portioned fault as follows: Alcoa—60%; Crush International, Dr. Pepper and San Antonio Pepper—40%. The district court entered judgment against Alcoa in the amount of $125,860.

**5.** As to San Antonio Pepper, Interrogatories Nos. 1 and 3 can be reconciled with Interrogatory No. 10. The jury could have concluded that although the bottling machine and bottle cap were not defectively designed or manufactured, San Antonio Pepper failed to properly

place the cap on the bottle resulting in an unreasonably dangerous product that was unfit for its ordinary purpose.

A similar resolution of the conflict, however, is not possible as to Alcoa. Alcoa did not participate in placing the cap on the bottle; its liability depends on whether the bottling machine or cap was unreasonably dangerous when it left Alcoa's control.

findings cannot be reconciled, the portions of the judgment entered on those jury findings cannot stand and must be remanded for a new trial.

## B.

■ Alcoa also contends that liability based upon the failure to warn cannot be sustained because the jury was not instructed that a warning to an intermediary, San Antonio Pepper, could constitute a sufficient warning to the plaintiff. We agree.

In *Alm v. Alcoa*, 717 S.W.2d 588 (Tex. 1986), decided after the instant case was tried, the Texas Supreme Court held that Alcoa has a duty to warn the ultimate consumer of dangers arising from bottle caps made by an intermediary from blanks supplied by Alcoa. But the court further held that such a manufacturer "should be able to satisfy its duty to warn consumers by proving that an intermediary was adequately trained and warned, familiar with the propensities of the product, and capable of passing on a warning." *Id.* at 592.

The jury in the instant case found that Alcoa was negligent in failing to warn Costilla. But the jury evaluated the adequacy of Alcoa's warning without an instruction that Alcoa's instructions and warnings to San Antonio Pepper could fulfill Alcoa's duty to warn Costilla. Alcoa was entitled to such a charge under *Alm. Leonard v. Alcoa*, 800 F.2d 523, 524–25 (5th Cir.1986).

■ Appellee argues that this issue is foreclosed from review because Alcoa did not request a special finding on this issue and consequently we should consider that the jury decided this issue adverse to Alcoa under Rule 49(a).[6] *Leonard v. Alcoa*, 800 F.2d 523, is dispositive of this argument. In *Leonard*, this court rejected an identical argument:

> Here the jury found that ALCOA's warnings to the ultimate consumer were inadequate. The Texas Supreme Court's *Alm* decision, however, requires that the jury must be instructed on another issue

before liability can be imposed on ALCOA, *viz.*, that ALCOA's warnings to and training of Temple Dr. Pepper Bottling were inadequate. The proper application of Rule 49(a) does not allow this second finding to be deemed.

*Id.* at 525. The recent change in Texas law requires a retrial of this issue.

## C.

Alcoa also contends that no legal basis exists to sustain the award of punitive damages. The punitive damage award was predicated on Alcoa's "heedless" and "reckless" failure to warn. Because the failure to warn issue must be retried, the punitive damage claim must also be retried.

## CONCLUSION

In summary, we remand this case to the district court for a complete new trial for several reasons. First, the jury gave conflicting answers to special interrogatories addressing the products liability and breach of warranty claims. Second, following the trial of this case, the Texas Supreme Court in *Alm* adopted a new rule that a manufacturer such as Alcoa can fulfill its duty to warn the consumer of the dangerous propensities of its product by giving adequate instruction to the intermediary. The jury in this case was not instructed that Alcoa could fulfill its duty to warn in this way. Thus, plaintiff's products liability and negligence counts against Alcoa predicated on Alcoa's failure to warn must be retried so the jury can consider the adequacy of Alcoa's instructions and warnings in light of the *Alm* rule. Third, the punitive damage award predicated on Alcoa's reckless failure to warn must also be retried. Fourth, the compensatory damage issue should also be retried because this issue is so intertwined with the punitive damage issue. Fifth, the reassessment by the jury of Alcoa's fault in light of *Alm* also requires the jury on retrial to reconsider the settling codefendant's fault, if any, and the extent of that fault.

---

6. Fed.R.Civ.P. 49(a) provides in part: "As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

Accordingly, the judgment of the district court is vacated and this case is remanded to the district court for a new trial.

VACATED and REMANDED.